2021 IL App (1st) 200799-U

No. 1-20-0799

Second Division
September 28, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| MARIA RAMIREZ, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2018 L 002161 |
| | ) | |
| ANA ACEVEDO, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Bridget Hughes |
| | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's judgment is affirmed where the court properly allowed the submission of a negligence claim, permitted opinion testimony on the obligation to have a deck inspected, denied defendant's motion for new trial for violation of a motion *in limine*, and allowed the submission of both Illinois Pattern Jury Instruction 60.01 as to violation of ordinances and the total amount of plaintiff's medical bills.

¶ 2    Plaintiff-appellee, Maria Ramirez, filed suit against defendant-appellant, Ana Acevedo, for

injuries she sustained as a result of a deck collapse at defendant's home. The jury found in favor

of plaintiff. The trial court entered judgment against defendant and denied her motion for directed verdict and posttrial motions for a judgment notwithstanding the verdict, remittitur, and a new trial. On appeal, defendant argues that this court should reverse the trial court's judgment where plaintiff was allowed to submit a negligence case when the evidence went towards a premises liability case because it centered on a defective condition on defendant's property. Alternatively, defendant argues that we should remand the case for a new trial because the trial court erred in allowing: (1) opinion testimony on the obligation to have the deck inspected; (2) submission of Illinois Pattern Jury Instructions, Civil, No. 60.01 (2000) (hereinafter IPI Civil (2000) No. 60.01) as to violation of ordinances; (3) plaintiff's attorney mention of defendant's insurance carrier during cross-examination; and (4) submission of the total amount of plaintiff's medical bills without proper foundation. For the reasons that follow, we affirm.

¶ 3                              I. BACKGROUND

¶ 4      On March 6, 2016, defendant invited family and friends to her home in Melrose Park, Illinois. At the time defendant moved into the home in 2001, a wooden deck was attached to the back of the house. Defendant could not recall whether, when she moved in, a home inspection was conducted. Neither defendant nor her husband had hired anyone to inspect the deck since then. About 40 people were present at the March 6, 2016 gathering. During the gathering, the deck collapsed while supporting a table, grill, chairs, and a group of approximately 18 to 20 people. Plaintiff was standing on the corner of the deck that collapsed first, causing several other people to fall on top of her during the incident. Plaintiff was transported by ambulance to Gottlieb Hospital (Gottlieb), where she was treated for a broken ankle.

¶ 5                           A. Amended Complaint

¶ 6     On December 20, 2019, plaintiff filed an amended complaint alleging that it was defendant's duty "to exercise ordinary care in the ownership, maintenance, management and control of the residence *** and, specifically, of the porch/deck." Plaintiff alleged that defendant breached that duty of care by carelessly and negligently: (1) failing to "maintain proper structural support and integrity of the porch/deck in violation of applicable building codes"; (2) failing to install joist hangers "at the east end of the porch, in violation of applicable building codes"; (3) allowing "more persons and weight to congregate upon the porch/deck than it could reasonably be expected to support"; (4) failing to inspect the porch/deck; (5) failing to warn plaintiff of the dangerous condition of the porch/deck; (6) failing to repair the porch/deck when plaintiff knew or should have known repairs were necessary; and (7) failing to discover the defective condition of the porch or deck. Plaintiff further alleged that "[a]s a direct and proximate result [of] one or more of the aforesaid careless and/or negligent acts or omissions of the defendant, *** the porch/deck collapsed" and caused her injuries.

¶ 7                                    B. Motions *in Limine*

¶ 8     Prior to jury trial, defendant filed two motions *in limine*. In the first motion, defendant sought to exclude any references to: (1) the "character or type of the law firm that represents [d]efendant"; (2) the fact that at the time the alleged incident occurred, defendant was "afforded insurance coverage"; and (3) the fact that "any portion of any judgment entered against the [d]efendant *** will be paid in total or in part by an insurance company." Additionally, defendant sought, *inter alia*, to exclude any references that would "create an inference that the defendant is being afforded insurance or that the defense herein is being provided by an insurance company or any person and/or entity other than the defendant."

¶ 9    The second motion sought to exclude expert testimony of Scott Leopold as to what a reasonable person would do or not do and specifically, that a reasonable person, prior to the date of the incident, would have had an inspection performed or that a reasonable person would have anticipated the porch collapsing.

¶ 10    The court granted defendant's first motion *in limine*, with respect to the law firm and insurance coverage, without objection, but denied defendant's second motion as to Leopold's testimony.

¶ 11                                    C. Jury Trial

¶ 12    The case proceeded to a three-day jury trial beginning on March 4, 2020. The witness testimony, relevant to this appeal, is as follows.

¶ 13    Plaintiff's expert, Leopold, a licensed structural engineer, testified about his experience working with building codes, reviewing designs of exterior structures, as well as designing repairs for wooden decks. His experience also included inspections of porch and deck collapses. He noted that the applicable building codes, International Property Maintenance Code (IPMC) and Council of American Building Officials Code (CABO), were both adopted by Melrose Park and when a municipality adopts a building code, it becomes law. Leopold testified that there are unique requirements in IPMC specific to exterior structures. For instance, IPMC "requires that the exterior of a structure shall be maintained structurally sound for safety." Because exterior wooden structures are prone to decay and have a service life of about 10 years, Leopold opined that "the only way to assure compliance with the code is to look at it" and have an inspection conducted by "someone who's familiar with inspection of decks like a home inspector or construction of decks like a deck builder." He opined that after about 10 years, wooden decks should be inspected annually.

¶ 14    Leopold further testified that CABO required "approved framing anchors," which is the same as joist hangers for decks and could be purchased at a Home Depot or Lowe's. Leopold identified the lack of joist hangers on the east end of plaintiff's deck to be one of the causes for collapse in the instant case. He testified that the deck "connections that were there [at that time] were overloaded." Leopold opined that had the deck in question been inspected by a deck builder or a home inspector with knowledge of deck construction, the absence of the joist hangers would have been discovered. When asked whether plaintiff should have inspected the deck despite having "never noticed a problem with the deck," Leopold responded "[w]ithout a doubt" because a wooden deck "needs to be inspected initially," such as when the property is purchased, and inspection is also needed when the deck is about 10 years old. Aside from the lack of joist hangers, Leopold also attributed the deck collapse to the number of people on the deck. Based on his review of discovery responses and depositions in the case, Leopold believed that there were approximately 18 to 25 people on the deck at the time of the collapse. He opined that the deck was "overcrowded to support the weight" and had there "been joist hangers on that outside beam the way it was required by code, the deck would not have collapsed with 20 or 25 people on it." He noted, based on defendant's deposition testimony, that defendant did not "have any basis to believe that the deck could support a crowd of people. She was not aware of any inspections having ever been done during the time she owned the house."

¶ 15    Defendant's expert, Shaun Pergande, had worked as a forensic engineer up until four or five years before the trial. As a forensic engineer, Pergande "applied the principles of mechanical engineering, studies of forces, mechanics, [and] strength of materials to basically understand the root causes of an accident," including accidents involving porch and deck collapse. According to Pergande, Melrose Park did not have any ordinance requiring inspections of decks, but it had

adopted the IPMC. He spoke with Melrose Park's building inspector, Dan Adams, who advised him that the applicable building code was BOCA. Pergande explained that in the last 50 years, there were three building standards in the country: (1) BOCA, which was used in the Northeast and Midwest region, (2) CABO, which "was kind of the Southeast" region, and (3) a third code, which was used in the West Coast.

¶ 16    Pergande testified that in the instant case, the east side of the deck had collapsed and that "there were [only] two screws into the end grain of each joist through the rim joist." When asked if the screws complied with the applicable code, Pergande responded that "building codes are typically not prescriptive," meaning that they do not state "exactly what you have to do." Pergande explained that BOCA, like "most standards and codes [is] more general *** [or] performance-based." This means that the code simply requires that the "connections [are] capable of bearing the "load" or weight. Pergande opined that the design of the deck in this case compiled with BOCA, but the lack of sufficient screws to connect the joists did not. He testified that had an inspection been performed during and after the structure was completed, the "deficiency here would have been identified." However, he disagreed that defendant needed to inspect her deck. He noted that the deck was well-maintained with no deterioration of the wood structure and there was nothing that would have alerted defendant of a structural issue such as warping, crackling, or wobbling. When asked if there was anything that plaintiff "did or failed to do regarding the care and maintenance of this deck that was inappropriate," Pergande responded that "[t]here was nothing in my mind that she did wrong" because there was no evidence of significant corrosion, loose boards, wobbling and "[a]ll the connections were tight."

¶ 17    During cross-examination, Pergande agreed that Melrose Park adopted the One and Two Dwelling Code which is the same as the 1995 edition of the CABO One and Two Family Dwelling

Code. He also agreed that Melrose Park required defendant to maintain her deck in a safe condition and that the deck as it existed on the day of the incident was not safe. When asked whether "[o]ne of the reasons that [the deck] was not safe was because it did not have joist hangers," Pergande stated that "it was not safe because it did not have the capability to maintain the required load *** [and] there's a variety of ways of achieving that performance," with joist hangers being one of them. He agreed that the incident could have been prevented had joist hangers been installed. Pergande testified that exterior wood structures become a safety issue only after existing for more than 40 years.

¶ 18    Plaintiff's counsel, on cross-examination, further questioned Pergande about his expert consulting background, which referenced work for insurance companies. The following colloquy occurred:

"Q. And many of those [cases] were referred to you or you were retained by insurance companies?

A.  I was retained by a variety of different companies. Typically, if you do a good job, you get asked back to do more work with the same client so[.]

Q. All right. You've been retained by Allstate?

A. In this case, I was retained by Mr. Fabricius [defense counsel]

Q. Okay. In the past, you've been retained by Allstate?"

MR. FABRICIUS: Your Honor, what's the relevance?

THE COURT: Yeah, it's not relevant. The objection is sustained."

¶ 19    On redirect examination, the following colloquy occurred:

"Q. And you were asked about work you do or who hires you. You get hired by different types of companies?

A. Absolutely.

Q. You get hired by different insurance companies?

A. Yes.

Q. Apparently, Allstate is one of them?

A. Correct.

Q. Different insurance companies?

A. Correct.

Q. Different independent companies that have nothing to do with insurance?

A. Correct. I've worked for different — I've worked for different auto manufacturers, material handling, heavy earth-loading equipment, lawnmower manufacturers. I've worked for all sorts of different companies. I've worked for plaintiffs before.

Q. And you also get hired by attorneys and law firms?

A. Correct.

Q. And in the cases you and I have had, I hired you?

A. Correct.

Q. I've been the one that hired you?

A. I think a little of both maybe."

¶ 20    At a sidebar, the court noted that plaintiff's counsel had violated the motion *in limine* regarding insurance, but that defense counsel had addressed the issues well on redirect. The court

asked if defense counsel would like a jury instruction read to cure the violation. Defense counsel declined.

¶ 21    Plaintiff testified that defendant was her sister-in-law. Following the deck collapse, she was transported to the emergency room at Gottlieb. When asked "[w]hat, just generally, did they do for you at Gottlieb?", plaintiff responded that she was given pain medicine and "x-ray, elevation, ice, and two reductions." The reductions involved aligning her right ankle because it was dislocated. Plaintiff's left ankle was placed in a brace for support. During her testimony, plaintiff was shown Plaintiff's Exhibit 25, which she identified as a summary of the medical bills she incurred as a result of the incident. Defense counsel objected to the request to publish the exhibit to the jury, arguing that a proper foundation had not been laid. Plaintiff's counsel then proceeded to ask plaintiff if the bills had been paid in full to which plaintiff responded that they had. Plaintiff testified that the total amount of the bills she incurred was $40,362.90. Exhibit 25 was then published to the jury without objection from defense counsel.

¶ 22    Dr. Paul Prinz, plaintiff's orthopedic surgeon, testified by videotaped evidence deposition. Dr. Prinz was shown Plaintiff's Exhibit 5, which were the medical bills pertaining to plaintiff's surgery at Gottlieb, physical therapy at Gottlieb, and Dr. Prinz's bills from Special Care Orthopedics. When Dr. Prinz was asked whether the physical therapy, emergency room, and the surgery bills from Gottlieb were reasonable, defense counsel objected on the basis that "Dr. Prinz did not order and that he did not provide specifically the emergency room bill." Plaintiff's counsel then rephrased the question and asked Dr. Prinz if he had "an opinion whether the treatment that [plaintiff] received at Gottlieb for the physical therapy and the surgery were reasonable." Dr. Prinz testified that based on his 25 years of experience as an orthopedic surgeon in the Chicago area, the

physical therapy and surgery bills from Gottlieb, as well as his own bills from Special Care Orthopedics, were fair and reasonable.

¶ 23    At the close of plaintiff's case in chief, defendant presented a motion for a directed verdict. Defendant argued that plaintiff had failed to present evidence to prove the cause of action for negligence. The court denied the motion.

¶ 24                                D. Jury Instructions

¶ 25    As relevant to the issues on appeal, plaintiff submitted Jury Instructions 19 and 21. Jury Instruction 19, which quoted CABO and incorporated IPI Civil (2000) No. 60.01, entitled "Violation of Statute, Ordinance, or Administrative Regulation," read as follows:

> " There was in force in the City of Melrose Park at the time of the occurrence in question a certain ordinance which provides that:
>
> Joist framing into the side of the wood girder shall be supported by approved framing anchors or on ledger strips not less than nominal 2 inches by 2 inches (51 mm by 51 mm). CABO One and Two-Family Dwelling Code, 1995 Edition.
>
> If you decide that a party violated the ordinance on the occasion in question, then you may consider the fact together with all other facts to what extent, if any, a party was negligent."

¶ 26    Jury Instruction 21, which quoted IPMC and incorporated IPI Civil (2000) No. 60.01, read as follows:

> "There was in force in the City of Melrose Park at the time of the occurrence in question a certain ordinance which provides that:

This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein. IPMC, 2006 Edition.

If you decide that a party violated the ordinance on the occasion in question, then you may consider the fact together with all other facts to what extent, if any, a party was negligent."

¶ 27 Prior to trial, defendant objected to plaintiff's Jury Instructions 5, 6, and 7, which were relevant to negligence claims, on the basis that the case should have been a submitted as a premises liability claim. However, later during the jury instruction conference, defendant did not object to instructions concerning the definitions of negligence, ordinary care, and the duty to exercise ordinary care. Defendant did not request a premises liability instruction be submitted to the jury.

¶ 28                                E. Trial Court Decision

¶ 29 The jury returned a verdict in favor of plaintiff in the amount of $268,782, which included: $25,000 for pain and suffering, $100,000 for "pain and suffering reasonably certain to be experienced in the future as a result of the injuries," $20,000 for the loss of normal life, $50,000 for "loss of a normal life reasonably certain to be experienced in the future," $40,362 for "reasonable expense of necessary medical care, treatment and services received," $23,420 in lost earnings, and $10,000 in disfigurement resulting from the injury. On March 20, 2020, defendant filed motions for judgment notwithstanding the verdict and remittitur. On March 26, 2020,

defendant filed a motion for a new trial. On June 11, 2020, the trial court denied defendant's motions. This appeal followed.

¶ 30                               II. ANALYSIS

¶ 31    On appeal, defendant argues that this court should reverse the trial court's judgment because the trial court erred in allowing plaintiff to submit a negligence claim, rather than a premises liability claim, where the issue was related to an allegedly defective condition of defendant's property. Alternatively, defendant argues that we should remand for a new trial because the trial court erred in allowing (1) Leopold's opinion testimony on the obligation to have the deck inspected based on his interpretation of the applicable standard of care; (2) submission of IPI Civil (2000) No. 60.01 as to violation of ordinances where there was no evidence that the standards argued were supported by ordinances or that they had the force of law and were applicable to the facts of the present case; (3) violation of the motion *in limine* by plaintiff's attorney who brought up defendant's insurance carrier during cross-examination; and (4) submission of the total amount of plaintiff's medical bills without proper foundation as to their reasonableness.

¶ 32                             A. Negligence

¶ 33    Defendant argues that the trial court erred in denying her motion for directed verdict or motion for judgment *n.o.v.* because the "facts presented to the jury and the arguments made by counsel pertained to a defective condition of the property." As such, defendant maintains that the case should have been submitted under a theory of premises liability instead of negligence. Further, defendant concludes that the judgment must be reversed because plaintiff failed to prove a premises liability claim where there was no evidence that defendant had notice of the defective condition of the deck.

¶ 34    As a general matter, motions for a directed verdict and motions for a judgment *n.o.v.,* although made at different times, raise similar questions and are governed by the same rules of law. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). A directed verdict or judgment *n.o.v.* should be entered only in cases where " 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on the evidence could ever stand.' " *Hamilton v. Hastings*, 2014 IL App (4th) 131021, ¶ 22 (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). In ruling on these motions, a court does not weigh evidence or consider the credibility of witnesses; rather the court only considers the evidence and any inferences therefrom in the light most favorable to the nonmoving party. *Maple*, 151 Ill. 2d at 453. Judgment should not be entered on either motion when "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple*, 151 Ill. 2d at 454. We review *de novo* a trial court's decision on a motion for directed verdict or judgment *n.o.v. Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37.

¶ 35    Prior to addressing defendant's arguments, we find it imperative to note the distinction between an ordinary negligence claim and a premises liability claim. Ordinary negligence requires proof of: (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *Guvenoz v. Target Corp.*, 2015 IL App (1st) 133940, ¶ 89. Whether a duty exists is a legal question of law for the court to decide, whereas the question of "whether a defendant breached the duty and whether that breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues." *Greenhill v. REIT Management & Research, LLC*, 2019 IL App (1st) 181164, ¶ 47

(2019). Violation of a statute or code designed to protect human life is *prima facie* evidence of negligence. *Kalata v. Anheuser-Busch Companies Inc.*, 144 Ill. 2d 425, 434 (1991). "A party injured by such a violation may recover only by showing that the violation proximately caused his injury[,] and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered." *Id.* "The violation does not constitute negligence *per se,* however, and therefore the defendant may prevail by showing that he acted reasonably under the circumstances." *Id.*

¶ 36    A claim for premises liability, on the other hand, requires proof of the three elements of ordinary negligence along with proof that: (1) there was a *condition* on the property that presented an unreasonable risk of harm, (2) the defendant knew or reasonably should have known of the condition and the risk, and (3) the defendant could reasonably have expected people on the property would not realize, would not discover, or would fail to protect themselves from the danger. *Hope v. Hope*, 398 Ill. App. 3d 216, 219 (2010).

¶ 37    Defendant contends that this case should have been submitted under a theory of premises liability instead of a theory of negligence because there is "no evidence or allegation that [defendant] caused the dangerous condition" and instead, the evidence and arguments presented in the case were based on the dangerous condition of the premises. As such, defendant asserts that plaintiff had the burden to prove that "[defendant] had actual or constructive notice of the condition." Generally, a plaintiff is "entitled to elect the legal theory upon which to proceed." *Smart v. City of Chicago*, 2013 IL App (1st) 120901, ¶ 45. When a plaintiff is injured on a landowner's property, "a plaintiff may elect to pursue a negligence claim, a premises liability claim, or both." *Id.* ¶ 54. This is because " 'plaintiffs are masters of their complaint and are entitled

to proceed under whichever theory they decide, so long as the evidence supports such a theory.' " *Id.* (quoting *Reed v. Wal-Mart Stores*, 298 Ill. App. 3d 712, 717 (1998)).

¶ 38    In *Smart*, the plaintiff was injured while riding his bicycle on the city's bicycle path which was in the process of being resurfaced by the city. 2013 IL App (1st) 120901, ¶ 1. The plaintiff filed a one-count negligence complaint against the city, alleging that the city failed to maintain its property in a reasonably safe condition. *Id.* ¶ 14. The plaintiff tendered a negligence instruction, and the city tendered a premise liability instruction. *Id.* ¶¶ 21-22. The trial court accepted the plaintiff's instruction and denied the city's instruction. *Id.* ¶ 22. The jury returned a verdict in favor of the plaintiff and the city filed a posttrial motion, which the court denied. *Id.* ¶¶ 22-24. On appeal, the city argued that the court erroneously rejected its proffered premises liability instruction because it was not engaged in any "activity" on the date that the plaintiff was injured and therefore, it could not be said that any activity conducted on the premises proximately caused the plaintiff's injuries. *Id.* ¶ 50. This court rejected the city's argument. *Id.* The court noted that plaintiff chose to pursue a negligence claim and his complaint "sounded in negligence, and not premises liability." *Id.* ¶ 47. The court further reasoned that the city's conduct created the hazard that caused the plaintiff's injuries because the city's activity in resurfacing the intersection was ongoing and "altered the otherwise safe bicycle path," which was the proximate cause of the plaintiff's injuries. *Id.* ¶ 55.

¶ 39    Here, plaintiff's complaint outlined a theory of negligence rather than premises liability. Like *Smart*, plaintiff's complaint alleged that the defendant failed to maintain the deck in a reasonably safe condition. Specifically, in her complaint, plaintiff asserted that it was defendant's duty "to exercise ordinary care in the ownership, maintenance, management and control of the residence *** and, specifically, of the porch/deck." Plaintiff argued, *inter alia*, that defendant

breached that duty of care by carelessly and negligently failing to inspect and maintain the premises pursuant to the building codes and allowing "more persons and weight to congregate upon the porch/deck than it could reasonably be expected to support." Plaintiff further alleged that "[a]s a direct and proximate result [of] one or more *** careless and/or negligent acts or omissions of the defendant, *** the porch/deck collapsed" and caused her injuries. The complaint clearly pled negligence on behalf of defendant and was not centered on the defective condition of property. Like *Smart*, plaintiff here chose to pursue a negligence claim and her complaint "sounded in negligence." Additionally, the evidence in this case, supported the finding that defendant's failure to inspect and maintain the premises pursuant to the applicable codes and allowing "more persons and weight to congregate upon the porch/deck" created the hazard that caused the plaintiff's injuries. The evidence, based on the codes and testimony, showed that defendant had an ongoing duty to maintain and inspect her premises. Therefore, the trial court did not err in allowing the case to be submitted under a theory of negligence.

¶ 40    In *Reed*, an earlier case, the plaintiffs (husband and wife) went to the garden area of a Wal-Mart Store. 298 Ill. App. 3d at 712-13. The wife stepped on a rusty nail protruding from a board situated in the middle of the garden area. *Id.* The plaintiffs sued Wal-Mart for negligence, alleging that Wal-Mart caused an unreasonably dangerous condition to exist on the premises, allowed the condition to exist (although it knew or should have known of its existence), failed to remove the condition, and failed to have an inspection system in effect. *Id.* The plaintiffs submitted instructions on negligence and Wal-Mart submitted an instruction that required the plaintiffs to prove that it had actual and constructive notice of the dangerous condition on the property. *Id.* at 714. The trial court submitted Wal-Mart's instruction and the jury returned a verdict for Wal-Mart. *Id.* at 715. The plaintiffs appealed, arguing that the trial court erred in submitting Wal-Mart's

instruction of actual or constructive notice where the facts showed that the dangerous condition was caused by the actions of Wal-Mart or its employees. *Id.* Wal-Mart, on other hand, argued that the jury was properly instructed on notice because the plaintiffs' complaint sought to recover under a premises liability theory, and not ordinary negligence. *Id.* at 717. The Fourth District reversed, finding that the plaintiffs submitted "more than 'slight' " evidence to show that the board was placed in the pathway by Wal-Mart. *Id.* at 716. The Fourth District also found that because the plaintiffs' complaint alleged both an ordinary negligence cause of action (Wal-Mart caused the dangerous condition) and a premises liability cause of action (Wal-Mart maintained a dangerous condition), the plaintiffs' alleged active negligence and did not confine their cause of action to premises liability. *Id.* at 717.

¶ 41 *Reed* is similar to the present case in that both cases alleged "active" negligence. Even if we were to agree with defendant that plaintiff's complaint included allegations that went towards a cause of action for premise liability, we cannot overlook the fact that plaintiff's complaint established an underlying cause of action for negligence. Plaintiff's complaint did not solely allege that defendant breached the duty of care by negligently maintaining the premises pursuant to the codes but also that defendant failed to inspect and permitted "more persons and weight to congregate upon the porch/deck," which caused the deck to collapse and resulted in plaintiff's injuries. Although the lack of "joist hangers" or "screws" could have been attributed to someone other than defendant, there was evidence to suggest that it was also defendant's actions that created the dangerous condition at issue. The record consists of testimony that showed deck inspections are required to ensure decks are in sound condition. Here, defendant retained control of the premises for 15 years, failed to inspect her deck during those years, and allowed a group of people to gather on the deck. Plaintiff's expert testified that defendant did not have any basis to believe

that the deck could support a crowd of people without having conducted an inspection. As such, plaintiff presented testimony and evidence that was "more than slight" to show that defendant's actions, or lack thereof, created a condition that caused plaintiff's injuries. Therefore, the trial court did not err in submitting the case under the theory of negligence.

¶ 42    Defendant argues that the present case is more like *Carey v. J.R. Lazzara, Inc.*, 277 Ill. App. 3d 902 (1996) because defendant's liability was "predicated on the dangerous condition of the premises of the deck failing to have joist hangers installed that caused it to collapse." In *Carey*, the plaintiff was injured on the defendant's premises when she fell down a staircase that lacked center handrails, in violation of various safety codes that required center handrails for staircases more than 88 inches in width. *Id.* at 905. In her complaint, the plaintiff alleged that defendant was negligent for: (1) failing to provide (a) a center handrail and (b) adequate lighting; and (2) providing (a) a winding stairway with narrow steps, (b) one means of exiting the luncheon, and (c) handrails that were not easily grasped. *Id.* at 909. This court held that the jury instruction on notice was appropriate because liability was predicated on the dangerous *condition* existing on the defendant's premises, and not on the defendant's negligent activities. *Id.*

¶ 43    Carey is distinguishable from the present case. As previously discussed, plaintiff alleged, *inter alia*, the defendant carelessly and negligently maintained the premises pursuant to the building codes, failed to inspect, and permitted "more persons and weight to congregate upon the porch/deck" which caused the deck collapse. As such, plaintiff's claims were predicated on defendant's negligent activity rather than solely on the dangerous condition existing on defendant's premises.

¶ 44    We briefly note that defendant's reliance on *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976) is misplaced. Defendant cites *Genaust* for the proposition that "Illinois law requires

that the facts of this case be submitted as a premises liability case" and "[a]llowing plaintiff to circumvent the requirement of proving notice in a premises liability case simply by stating she wants to submit her case as negligence runs directly contrary to [*Genaust*]."

¶ 45     In *Genaust,* the plaintiff was installing a galvanized steel tower and antenna on defendant's property, when the tower and antenna came into close proximity to uninsulated overhead power lines. 62 Ill. 2d at 460-61. Electric current arced from the power lines to the antenna and severely injured the plaintiff. *Id.* The plaintiff filed a six-count complaint predicated upon negligence and strict liability in tort. *Id.* at 461-62. The circuit court dismissed five counts of the plaintiff's complaint, thus forming the basis for the appeal. *Id.* Count VI of the complaint alleged that the defendant knew or should have known in the exercise of reasonable care, that the power wires that passed through its property were not properly insulated, failed to warn him that the wires were dangerous, and failed to provide him with a safe place to work. *Id.* at 462. Our supreme court held that count VI failed to state a cause of action in negligence because the defendant "could not have discovered the danger of electrical arcing that existed by the presence of the power wires [w]hich were neither on its property nor under its control." *Id.*

¶ 46     Contrary to defendant's assertion, *Genaust* does not stand for the proposition that the facts of this case require that it be submitted as a premises liability case. Further, *Genaust* is factually distinguishable because unlike here, the "dangerous condition" in *Genaust* was not on the defendant's property or under his control. As such, *Genaust* does not control our disposition.

¶ 47     Having found that the court properly submitted the case on the theory of negligence, the question then becomes whether the evidence, viewed in the light most favorable to plaintiff, sufficiently supported her claim of negligence such that the verdict in her favor may stand. Defendant does not dispute that plaintiff satisfied all elements for a negligence cause of action.

Instead, as plaintiff notes, defendant asserts that plaintiff cannot prevail because defendant neither created the dangerous condition nor had actual or constructive notice of the dangerous condition. Because we hold that plaintiff's claim was properly brought on a negligence theory, defendant's argument as to notice fails.

¶ 48 We reiterate. To maintain a cause of action for negligence, plaintiff must establish that defendant (1) owed a duty of care, (2) breached that duty, and (3) an injury was caused by that breach." *Gutstein v. City of Evanston*, 402 Ill. App. 3d 610, 616 (2010). A cause of action for negligence does not require notice. Here, defendant owed plaintiff a duty to maintain her deck in a safe condition. Further, the evidence presented at trial showed that IPMC and CABO were adopted by Melrose Park, pertained to exterior structures such as decks, were created for safety reasons, and were intended to protect persons like plaintiff. Plaintiff's expert opined that the deck could have been maintained in a safe condition through inspection. The jury heard testimony that an inspection was not conducted and neither defendant nor her husband had hired anyone to inspect the deck in the 15 years they resided in the home. This served as the basis of plaintiff's claim, that defendant was negligent because defendant took no action to ensure the safety of the deck. The jury further heard testimony, although conflicting, as to whether defendant failed to maintain the deck in a safe condition by failing to inspect the premises. The jury also heard evidence as to the causes of the collapse which resulted in plaintiff's injuries. As such, plaintiff made a *prima facie* case for negligence.

¶ 49 In sum, the trial court did not err in allowing the plaintiff to proceed on a negligence theory where the evidence supported such a claim.

¶ 50 B. Expert Testimony

¶ 51 Defendant next argues that the court erred in allowing Leopold to testify that defendant had "a duty to maintain her property and, as a reasonable person, would have had the deck inspected." Defendant contends that Leopold "failed to cite directly to any code or ordinance that required [defendant] to inspect her deck." Instead, defendant asserts that Leopold's testimony went to his interpretation of the applicable standard of care which should have been left to the jury to determine.

¶ 52 Generally, expert testimony is admissible "when the expert has knowledge or experience not common to a layperson and that knowledge or experience would aid the trier of fact in determining the facts at issue." *Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2003). The test is not whether the expert's explanation is necessary to the fact finder's understanding of the evidence, but whether the expert can help the trier of fact. *Miller v. Pillsbury Company*, 33 Ill. 2d 514, 516-17 (1965). "It is proper for a qualified expert to testify regarding a standard of care which is beyond the knowledge of the average person." *Sohaey v. Van Cura*, 240 Ill. App. 3d 266, 283 (1992). However, an expert witness is not competent to give testimony which amounts to statutory interpretation. *Id.* The admission of expert testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Martin v. Sally*, 341 Ill. App. 3d 308, 315 (2003). A trial court abuses its discretion when "no reasonable person would take the position adopted by the trial court." *Donaldson v. Central Illinois Public Service Co.*, 313 Ill. App. 3d 1061, 1070 (2000).

¶ 53 Here, Leopold testified regarding the applicable building codes. Both parties' experts were allowed to testify to assist the jury in understanding the applicable codes, when a deck needs to be inspected, as well as the fact that the codes require the decks to be maintained in a safe condition. Pergande noted that the "building codes are typically not prescriptive," meaning that they do not

state "exactly what you have to do." As such, what is required under the codes to satisfy the maintenance requirement is not obvious and an expert's opinion would be necessary regarding the standard of care and what maintenance entails. Therefore, the testimonies were admissible because they aided the trier of fact in determining whether inspection was required and whether defendant maintained the deck in a safe condition.

¶ 54    The issue of whether defendant should have inspected the deck was in dispute, with experts on either side having different opinions. Leopold testified that a deck should be inspected when it is 10 years old, whereas Pergande testified that inspection is required only when it becomes apparent that something needed to be inspected. As such, the expert testimony as to what was required by the building code went to the jury's valuation of the weight to be given to the testimony and the trial court did not err in allowing its admission. See *Gateway-Walden, LLC v. Pappas*, 2018 IL App (1st) 162714, ¶ 65 ("[A] party's objection to the testimony of an opposing expert on the basis that the expert's testimony includes improper elements or adopts a different theory of valuation goes to the weight, rather than the admissibility, of that testimony.") (Internal quotation marks omitted.).

¶ 55    Defendant cites *Sohaey v. Van Cura*, 240 Ill. App. 3d 266 (1992) and *LID Associates v. Dolan*, 324 Ill. App. 3d 1047 (2001) in support of her argument that admission of the experts' testimony was improper. The court in *Sohaey* noted that experts cannot give testimony that "amounts to statutory interpretation," offer "legal conclusions" that a jury could make on its own, or "testify regarding what legal research shows with respect to a key legal term" that should be defined by the court. (Internal citations omitted.) *Sohaey*, 240 Ill. App. 3d at 283.  Similarly, this court in *LID Associates* stated that an expert witness cannot give testimony "amounting to statutory interpretation" or regarding "legal conclusions" and opinions based on the "interpretation

of case law." (Internal citations omitted.) *LID Associates*, 324 Ill. App. 3d at 1058. As discussed, we find that the allegations and facts of this case required plaintiff to present expert testimony as to the standard of care and did not amount to any of the prohibited forms of testimony. In sum, the trial court did not err in admitting the expert testimony.

¶ 56                                  C. Jury Instructions

¶ 57    Defendant contends that the submission of Jury Instructions 19 and 21 was improper where (1) the trial record contained insufficient evidence to support that the codes cited in the instructions were validly adopted by Melrose Park or had the force of law; and (2) the codes were inapplicable to the facts and issues of the case. Because the submission of the jury instructions was improper, defendant argues that this court should reverse the trial court's judgment and remand the case for a new trial omitting Jury Instructions 19 and 21.

¶ 58    "The function of jury instructions is to convey to the jury the correct principles of law applicable to the submitted evidence." (Emphasis omitted.) *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 507 (2002). Jury instructions may quote portions of statutes and ordinances when the jury has heard evidence that the quoted portions of the statute or ordinance have been violated and the plaintiff offering the instruction alleges the violation constituted a breach of a duty owed by defendant. *Mayol v. Summers, Watson & Kimpel*, 223 Ill. App. 3d 794, 810 (1992). "Generally, a trial court's decision to grant or deny an instruction is reviewed for [an] abuse of discretion." *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13. A trial court does not abuse its discretion regarding the tender of jury instructions if the instructions in their entirety "fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273 (2002).

¶ 59     In the present case, defendant takes issue with Jury Instructions 19 and 21. Jury Instruction 19 quoted CABO, which provides that "[j]oist framing into the side of the wood girder shall be supported by approved framing anchors or on ledger strips not less than nominal 2 inches by 2 inches (51 mm by 51 mm)." Jury Instruction 21 quoted IPMC which provides that the "code shall be construed to secure its express intent, which is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises." The quoted IPMC language further provides that "[e]xisting structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein." Both instructions state that "[t]here was in force in the City of Melrose Park at the time of the occurrence in question a certain ordinance" which quoted the CABO and IPMC language.

¶ 60     We first address defendant's argument that there is insufficient evidence to support that the codes cited in the instructions were validly adopted by Melrose Park or had the force of law. Here, both parties' experts testified that the IPMC and COBA sections were adopted by Melrose Park. Although Pergande testified that BOCA was applicable, he stated during cross-examination that Melrose Park adopted the "One and Two Dwelling Code which is the same as the 1995 edition of the CABO One and Two Dwelling Code." Further, at the jury instruction conference, defense counsel agreed that Melrose Park had adopted these code sections. As such, defendant cannot now complain of the error to which defendant consented. See *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (stating that a party cannot raise an error on appeal where doing so would be inconsistent with the position taken by that party in an earlier court proceeding). Defendant states that the instructions merely cite and quote the codes without citing or quoting any Melrose Park ordinances adopting the code. However, as defendant points out, plaintiff introduced Melrose Park Ordinance

No. 329 as an exhibit, which contained these codes.[1] Absent evidence to the contrary, we cannot assume that the codes were not adopted.

¶ 61    Citing *Bulger v. Chicago Transit Authority*, 345 Ill. App. 3d 119 (2003), defendant asserts that even if this court were to find that the codes had been validly adopted by Melrose Park, the codes still lack the force of law as they were merely "aspirational guidelines for safety." In *Bulger*, the plaintiff sued defendants for personal injuries he sustained after being struck by a bus driver employed by the Chicago Transit Authority (CTA). 345 Ill. App. 3d at 105. The plaintiff submitted IPI Civil (2000) No. 60.01 that quoted CTA administrative rules. *Id.* at 117. Defendants argued that the CTA's internal rules lacked the force of law and therefore, violation of the rules should not have been incorporated into the jury instructions as evidence of negligence. *Id.* On appeal, this court found that the CTA rules lacked the force of law, and therefore, the instructions were improperly submitted to the jury. *Id.* This court reasoned the CTA rules were internal rules and standards and the record does not reflect those rules and standards were adopted by any city, state, or federal regulatory agency that oversees CTA operations. *Id.* at 120. Further, we held that the fact that the section of the Metropolitan Transit Authority Act granted CTA all powers necessary or convenient to operate its transportation system did not mean that section conferred the force of law to the Authority's internal rules and standards. *Id.*

¶ 62    In contrast, the codes here were adopted by Melrose Park through an ordinance. Because the codes were adopted by the city of Melrose Park through an ordinance and municipal ordinances operate as a law, we find that the codes were standards with a force of law in that community. See *City of Chicago v. Roman*, 184 Ill. 2d 504, 511 (1998) ("[a] municipal ordinance has the force of

___

[1] The record does not include Melrose Park Ordinance No. 329 that was introduced as an exhibit.

law over the community in which it is adopted and, within the corporate limits, operates as effectively as a law passed by the legislature."). Unlike *Bulger¸* where the Metropolitan Transit Act simply granted CTA all powers necessary or convenient to operate its transportation system and did not confer the force of law to the authority's internal rule and regulations, the Melrose Park Ordinance No. 329 specifically adopted the codes. As such, contrary to defendant's assertion, by enacting the ordinance, the city did not just adopt and incorporate some of the language of the codes but adopted it in its entirety.

¶ 63    Next, defendant argues the codes were inapplicable to the facts and issues of the case. With respect to Jury Instruction 19, which cited to a section of CABO regarding regulations for the proper construction of a deck, defendant contends that she could not have violated the section where there was no evidence that defendant was responsible for the construction of the deck. Essentially, defendant argues that the instruction was improper because a third-party constructed the deck and defendant should not be found negligent for a third-party's negligence. The "Notes on Use" accompanying IPI Civil (2000) No. 60.01 provides that this instruction "may be used in a case where there is evidence tending to show that a violation of a statute by a non-party third person may have been a proximate cause of the occurrence." IPI Civil (2000) No. 60.01. In cases involving third-party's negligence, the party maintaining the property still has a duty to safely maintain the property, so long as the statute or ordinance imposes such a duty. *Robert v. City of Chicago*, 105 Ill. App. 3d 383, 385 (1982). As such, defendant still has the duty to maintain the deck in a safe condition regardless of whether defendant constructed the deck. Therefore, submission of Jury Instruction 19 was proper.

¶ 64    With respect to Jury Instruction 21, which cited IPMC and pertained to the maintenance and repair to existing structures, defendant contends that there was no evidence to indicate that

defendant had notice that the deck was in need of repair or that the deck did not comply with the code. Further, defendant argues that the quoted language in Jury Instruction 21 failed to identify a specific duty or action which was allegedly violated. Defendant asserts that the instruction is ambiguous as it simply quotes that the existing structures and premises are to be altered to comply with "these provisions" without specifying the provisions and further, does not state what constitutes "a minimum level of health and safety as required herein."

¶ 65    We first note that defendant's lack of knowledge of her violation of IPMC does not absolve her of liability. See *McCarthy v. Kunicki*, 355 Ill. App. 3d 957, 974 (2005) ("in establishing defendants' negligence based on an ordinance violation, plaintiff is not required to show defendants' awareness of the violation since the violation itself is *prima facie* evidence of negligence."). As such, the fact that defendant did not have notice that the deck needed repair or failed to comply with the code is irrelevant. Additionally, we find defendant's argument that the instruction was ambiguous to be without merit. The quoted IPMC language clearly states that the general purpose of  IPMC is to "ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises." Any "existing structures and premises that do not comply with these [IPMC] provisions shall be altered or repaired to provide a minimum level of health and safety as required." The quoted language clearly provides that IPMC and all its provisions are implicated where the matter concerns public health and safety which is affected by the maintenance of structures. The language also states that structures that do not meet this safety goal shall be repaired or altered. Here, the evidence presented showed that defendant owned a home with an attached deck that collapsed and resulted in plaintiff's injuries. The IPMC is implicated as its goal of safety is affected by plaintiff's

maintenance of the deck. As such, Jury Instruction 21 was clear and applicable to the facts and issues of the case. Therefore, the submission of Jury Instruction 21was proper.

¶ 66                                  D. Motion *in limine*

¶ 67    Defendant argues that violation of the motion *in limine* by plaintiff's attorney who raised the issue of defendant's insurance carrier during cross-examination warrants a new trial. "Violation of a motion *in limine* is not *per se* reversible error. Improper comments generally do not constitute reversible error unless the party has been substantially prejudiced." *Magna Trust Company v. Illinois Central Railroad*, 313 Ill. App. 3d 375, 395 (2000). "Any prejudicial impact of an error may be cured if the trial judge sustains an objection and instructs the jury to disregard the objectionable testimony." *Nickon v. City of Princeton*, 376 Ill. App. 3d 1095, 1103 (2007). A trial court's ruling addressing the violation of a motion *in limine* is reviewed for abuse of discretion. *Watson v. West Suburban Medical Center*, 2018 IL App (1st) 162707, ¶ 177.

¶ 68    Here, the motion *in limine* at issue prohibited any comments that would create an inference that defendant was insured or that defense was being provided by an insurance company. During cross-examination, plaintiffs' counsel inquired as to Pergande's consulting background. The questions did not necessarily create an inference that defendant was insured in the instant case because they pertained to Pergande's work with insurers in the past and different types of companies. Even assuming, *arguendo*, that the questioning violated the motion *in limine*, it was not substantially prejudicial. Defendant concedes that the trial court sustained defendant's objection to plaintiff's questioning as to insurance and ultimately instructed the jury to disregard the question. As such, any prejudicial impact was cured by the court.

¶ 69    Nevertheless, defendant argues that the court's "instruction to jury was clearly insufficient to cure the prejudicial impact as, evidenced by the jury submitting multiple questions throughout

the trial regarding defendant having insurance coverage." However, the record in this case belies defendant's contention because the subsequent questions from the jury did not involve insurance. We also note that defendant seized the opportunity to cure the violation by questioning its witness during redirect examination as to insurance. Additionally, defendant was presented with the opportunity to cure by the court via further jury instruction, which the defendant refused. After reviewing the record, we do not find that defendant was substantially prejudiced by the questioning of plaintiff's counsel. Therefore, any violation of the motion *in limine*, although error, was not reversible error.

¶ 70                                  E. Medical Bills

¶ 71    Finally, defendant argues, in her opening brief, that the trial court erred in allowing plaintiff to submit the entire amount of her medical bills without a proper foundation that all such bills were reasonable and had been paid in full. Generally, "[i]n order to recover for medical expenses, the plaintiff must prove that he or she has paid or will become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature." *Arthur v. Catour*, 216 Ill. 2d 72, 81-82 (2005). In Illinois, "the plaintiff may place the entire billed amount into evidence, provided that the plaintiff establishes the proper foundational requirements to show the bill's reasonableness." *Wills v. Foster*, 229 Ill. 2d 393, 414 (2008) (citing *Arthur*, 216 Ill. 2d at 81-83 (2005)). "When evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is *prima facie* reasonable." (Internal quotation marks omitted.) *Arthur*, 216 Ill. 2d at 82. If the bill is unpaid, plaintiff can establish reasonableness (1) by introducing the testimony of a witness having knowledge of the services rendered and the usual and customary charges for such services, and (2) that witness testifies that

the bills are fair and reasonable. *Id.* "The admission of evidence is within the sound discretion of the trial court and we will not reverse the court's decision 'unless that discretion was clearly abused.' [Citation.]" *McHale v. W.D. Trucking, Inc.*, 2015 IL App (1st) 132625, ¶ 28.

¶ 72    As an initial matter, we note that defendant waived her argument as to the medical bills by failing to object at the time of plaintiff's testimony. "The purpose of an objection is not only to preserve an issue for appeal, but to bring the potential error to the trial court's attention so that it may be contemporaneously addressed." *Pister v. Matrix Service Industrial Contractors, Inc.*, 2013 IL App (4th) 120781, ¶ 78. Here, plaintiff was shown a summary of the medical bills, which she testified were the bills she incurred as a result of the incident. Defense counsel objected to the request to publish the summary as an exhibit, arguing that a proper foundation had not been laid. Plaintiff's counsel then proceeded to lay a foundation by asking plaintiff if the bills were paid in full. Plaintiff testified that the bills had been paid. Defense counsel did not object at that time and the exhibit was published. By failing to timely object to plaintiff's testimony that the bills were paid in full, defendant did not bring the alleged error to the trial court's attention so that it could be contemporaneously addressed. The fact that defendant had initially objected to the admission of the medical bills or that " 'other objections were made at the time [plaintiff's] testimony was offered does not satisfy the requirement of a timely objection.' " *Russo v. Corey Steel Company*, 2018 IL App (1st) 180467, ¶ 40 (2018) (quoting *Johnson v. Hoover Water Well Service, Inc.*, 108 Ill. App. 3d 994, 1006-07 (1982)). " 'An objection to evidence based upon a specific ground is a waiver of objection on all grounds not specified.' " *Id.*; see also *Stapleton v. Moore*, 403 Ill. App. 3d 147, 156 (2010) ("A party is required to make specific objections to evidence, based on particular grounds, and the failure to do so results in a waiver of objections as to all other grounds not specified or relied on."). In the instant case, defendant initially objected to admission of the

medical bills on the ground that no proper foundation had been laid through plaintiff's testimony. Defendant, however, did not object or provide a ground for objection to plaintiff's subsequent testimony regarding payment of the medical bills. Therefore, defendant has waived her argument as to the medical bills.

¶ 73    Waiver aside, we find that defendant's argument lacks merit. Defendant does not point to the exact unpaid bill charges. Defendant simply asserts, without more, that plaintiff "should have only been allowed to testify that the amount of her medical bills that had been paid were reasonable and necessary" and that plaintiff "needed to prove the reasonableness of the remaining amount of the bills through other means, such as an expert witness in the medical field familiar with the charges." The record shows that plaintiff incurred a total of $40,362.90 in medical bills. Plaintiff states, and defendant does not dispute, that this amount included Gottlieb's bill in the amount of $33,121.19, Special Care Orthopedics' bill in the amount of $6,289, and the remaining $952.71 included the ambulance bill, "home medical expenses" for a wheelchair and commode, and prescriptions. Plaintiff testified, without objection, that all the bills submitted were for bills she incurred as a result of the incident and were paid in full. As such, the bills are *prima facie* reasonable because plaintiff's testimony established that they were for treatment rendered and that they had been paid. There is nothing in the record to indicate that the bills were unpaid. Further, Dr. Prinz testified that he had personal knowledge with respect to the treatment and surgery that plaintiff received at Gottlieb and that those bills were fair and reasonable based on his decades of experience and the customary charges of those services. He also testified that his own bills from Special Care Orthopedics were reasonable. As such, a proper foundation was laid through testimonies of both plaintiff and Dr. Prinz. Therefore, the court did not err in allowing plaintiff to submit the entire amount of her medical bills.

¶ 74                                      III. CONCLUSION

¶ 75      For the reasons stated, we affirm the judgment of the circuit court.

¶ 76      Affirmed.