2024 IL App (1st) 221622-U

No. 1-22-1622

Order filed May 24, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |
|---|---|
| ARIANA WILLIAMS and BRANDON STEELS, Individually, and as mother and father of JARRON STEELS, a minor, | ) ) ) ) |
|  | ) Appeal from the |
| Plaintiffs-Appellants, | ) Circuit Court of |
|  | ) Cook County. |
| v. | ) |
|  | ) No. 2017 L 8130 |
| JOSEPH THOMAS, M.D., | ) |
|  | ) Honorable |
| Defendant-Appellee. | ) James Varga, |
|  | ) Judge Presiding |
|  | ) ) |

JUSTICE LYLE delivered the judgment of the court.
Justices Mikva and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's judgment where there was no abuse of discretion to admit defendant's expert witness testimony and where jury instructions were proper.

¶ 2    Plaintiffs-Appellants Jarron Steels and his parents, Ariana Williams and Brandon Steels, filed a medical malpractice action against the delivering obstetrician, Defendant-Appellee, Dr. Joseph Thomas, alleging Jarron suffered injuries proximately caused by Dr. Joseph Thomas during delivery. The matter proceeded to jury trial. Plaintiffs now appeal the jury verdict finding in favor of Dr. Thomas. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4    Dr. Thomas was the delivering obstetrician for the delivery of Ariana Williams and Brandon Steels's child, Jarron Steels. Complications arose during the delivery, interfering with the baby's exit from the birth canal. Dr. Thomas believed baby Jarron had shoulder dystocia; a condition where after the baby's head exited the birth canal, one of the baby's shoulders was stuck in the pubic symphysis. After Jarron was delivered, Jarron was diagnosed with a permanent brachial plexus injury to his left arm and shoulder, a permanent injury to the nerve roots. Plaintiffs brought suit against Dr. Thomas, alleging that he negligently assisted the baby through the canal proximately causing Jarron's injury. The matter proceeded to jury trial where the jury returned a verdict for the defendant.

¶ 5    At trial, Dr. Thomas testified that he encountered Ms. Williams when she had progressed in labor and was fully dilated. He stated that Jarron's posterior (left) shoulder had been forced past the sacral promontory, or the bump in the spine of the mother. According to Dr. Thomas, the force of Ms. Williams' contractions was insufficient to complete delivery at that time. He decided to use a Kiwi vacuum, or a small handheld device, to assist Ms. Williams with her labor. As the baby's body did not deliver, Dr. Thomas determined that the anterior (right) shoulder was stuck against Ms. Williams's pubic bone.

¶ 6     Believing this was a shoulder dystocia event, Dr. Thomas attempted the McRoberts maneuver and suprapubic pressure to release the baby from the mother's pubic bone. To utilize the McRoberts maneuver, Dr. Thomas, with the help of nurses, pulled the mother's legs back towards her shoulder to increase the space between her pubic bone and sacrum. Dr. Thomas explained that suprapubic pressure occurs when the nurse uses her hand to put pressure on the pubic bone to release the baby's shoulder. He stated that the nurse pushed down on the bone to push the baby's shoulder underneath the public bone. He then explained the corkscrew maneuver, stating that the baby is manually rotated to deliver the posterior shoulder.

¶ 7     Dr. Thomas stated that after the head was delivered but before the corkscrew maneuver was attempted, he did not move the baby's head right ear to right shoulder. He explained that he would never do so for multiple reasons. According to Dr. Thomas, the first reason is that lateral flexing on the head would occur, which he stated he does not do. The second is that pushing the head up would defeat the purpose of using suprapubic pressure and the McRoberts maneuver to release the shoulder from the mother's pubic bone.

¶ 8     According to Dr. Thomas, there was no finding that during delivery, the left posterior shoulder was trapped by any of the bony structures. When asked whether he had an opinion as to what caused Jarron's brachial plexus injury, he stated that he didn't have one and that "no one knows" what caused the injury. He stated that his conduct during the delivery complied with the standard of care.

¶ 9     Dr. Thomas testified that, based on his knowledge and experience, if the posterior shoulder becomes impacted on the sacral promontory, the head of the baby is not outside of the mother at that time. He stated that impact on the sacral promontory point could be a cause for an injury to

the posterior shoulder. He agreed that an obstetrician cannot see a baby's shoulder stuck in the sacral promontory, but medical literature has documented cases of the event occurring.

¶ 10    Dr. Richard Luciani testified as Plaintiffs' obstetrician-gynecologist expert. Based on his review of the medical record, Dr. Luciani concluded that Dr. Thomas deviated from the accepted standard of obstetrical care. He stated that a permanent brachial plexus injury could not have been caused by the natural forces of labor. He described the maternal forces of labor, using figures and models, and concluded that such forces would not cause Jarron's injury. Specifically, he stated Dr. Thomas utilized excessive lateral traction during the delivery, leading to permanent brachial plexus injury in multiple nerve roots of Jaron's left shoulder. He testified that it is impossible for maternal forces of labor to cause this injury. He concluded that the only mechanism of injury could only be from excessive traction. He denied that the impaction of the posterior shoulder on the sacral promontory can cause shoulder dystocia.

¶ 11    On cross-examination, Dr. Luciani agreed that there was no documented record that Dr. Thomas applied excessive lateral traction during the course of the delivery. However, he stated that the brachial plexus injury was self-evidence that Dr. Thomas used excessive upward traction. In his opinion, absent a tumor, a "brachial plexus injury that occurs is the result of excessive lateral traction by the delivering physician." He admitted to not contributing to the literature in this field but stated that he had read almost every piece of literature available.

¶ 12    Dr. Daniel Adler, Plaintiffs' pediatric neurologist expert, testified that he believed that the material forces of labor could never create the injury suffered by Jarron. He stated that "it's never been reported, there's no medical literature, no one has written a paper saying this is possible. I've never personally seen it, and I would say in this particular case it could not possibly be the cause."

He went on to say that the "injury is sufficient to prove" that excessive lateral traction was used. Dr. Adler concluded that "the head must have moved after the delivery in a way that was lateral so that the right ear moved towards the right shoulder. Otherwise, the injury would have never occurred."

¶ 13    On cross examination, Dr. Adler agreed that there was no documented evidence in the hospital record or statements by individuals who witnessed the delivery that Dr. Thomas moved the head upward during the delivery. Dr. Adler restated that the injury sustained by Jarron is evidence that his head was moved during delivery. He was "not aware" of medical literature that contained case reports of permanent brachial plexus injury without application of traction.

¶ 14    Defense expert Dr. Steven Clark testified that he performed research and studied the pathophysiology of brachial plexus injuries after he encountered a case where the posterior shoulder was injured. Plaintiffs objected, stating that Dr. Clark's statement goes into his personal practice. Defense replied that the statement went to his background and training, which the trial judge agreed and overruled Plaintiffs objection.

¶ 15    Dr. Clark went on to explain that "several decades ago, it was thought that the only way a baby got a brachial plexus injury" was when a "doctor encounters shoulder dystocia, that it was that pulling, that tugging, that would cause brachial plexus injury" and that was "the end of the story." In that case, Dr. Clark explained that the "baby was delivered by the posterior arm, not the arm stuck under the pubic bone, was the one that turned out to have the injury. No amount of pulling and tugging that a doctor could do could possibly injure the posterior arm in a baby with a shoulder dystocia."

¶ 16    Since that case, Dr. Clark stated that the medical literature has expanded and has now described four ways for a baby's brachial plexus to be injured. He explained that "most of these injuries have nothing to do with what the doctor does" while trying to relieve the shoulder dystocia. He went on to describe the four ways brachial plexus injuries could occur. He stated that "any time I have twisting or turning of my head in one direction, I'm going to be stretching the brachial plexus in the other direction."

¶ 17    Dr. Clark then explained that the first possible cause of a brachial plexus injury is in utero crowding. The second is cardinal movements of labor. Referencing his prior testimony, Dr. Clark explained that "if there is a disproportion between the shoulders and the head of the baby and the pelvis of a mother***the brachial plexus may be stretched unduly or stretched abnormally, and brachial plexus injury can occur that way." According to Dr. Clark, this is a known cause because "half of all babies with brachial plexus didn't have a shoulder dystocia" which indicates that stretching occurred while the baby was naturally moving down the birth canal.

¶ 18    The third possible cause could be lifesaving maneuvers, such as the McRoberts and the corkscrew, utilized by the doctor. Dr. Clark explained some babies do not tolerate such maneuvers, which is called "biologic variability." He stated that the brachial plexus injury may occur while the doctor is trying to save the baby's brain function. The fourth possible cause of injury occurs if the doctor "pulls downward too hard" and stretches the brachial plexus. At this point, Plaintiffs' counsel objected, arguing that Dr. Clark was supposed to testify about the medical literature, but stated defense counsel was "starting to relate this to this particular case, and that is not what this expert is here to testify to." Following a conference out of the presence of the jury, the court sustained the objection.

¶ 19    Defense counsel then asked Dr. Clark about the significance of the findings of an article. Plaintiffs' counsel objected, stating that it was an "inappropriate use of literature on direct examination, to quote the findings." The trial court overruled the objection, stating that Dr. Clark was permitted to explain the significance of the findings to him. Dr. Clark stated that as of 1997, there was medical literature published in a peer-reviewed journal that showed you could have a permanent brachial plexus injury in the left posterior shoulder absent any physical traction.

¶ 20    Defense counsel then showed Dr. Clark an article he published in 2020. Plaintiffs' counsel objected, arguing that it was post-event literature and that it could not be used. Defense counsel argued the article was not being used for standard of care, but for causation. The trial court agreed that the article could be used for causation, overruling Plaintiffs' objection.

¶ 21    Defense expert Dr. Michael Ross then testified that there was no evidence that Dr. Thomas performed excessive traction based on his review of the medical record. He explained that after the delivery of the baby's head and the right anterior shoulder gets caught on the pubic bone, there is a shoulder dystocia. He then explained that when the posterior shoulder gets caught on the ledge of the sacral promontory, it can cause the brachial plexus nerves in that arm to stretch. At this point, the baby's head would not have been delivered. In his opinion, before Dr. Thomas arrived for the delivery process, the vacuum applied, and the delivery of the head, there was an impaction on the left posterior shoulder on the ledge of the sacral promontory that resulted in the injury to Jarron.

¶ 22    Dr. Ross explained that with the baby's head delivered, there is no indication to the obstetrician that there's been a left posterior shoulder injury. He then stated that there are recognized maneuvers to disengage a shoulder dystocia; the McRoberts maneuver, suprapubic

pressure, and the corkscrew. Based on his reading of the materials presented in the case, Dr. Ross did not see any lateral traction placed by Dr. Thomas during the delivery of Ms. Williams's baby. He testified that in order to have a traction induced injury, the doctor would have to pull up on the baby's neck to stretch the left side or move the head to baby's right ear to right shoulder. According to Dr. Ross, this is an anterior lateral traction. He stated that an upward lateral traction maneuver would be counterintuitive to disimpact an anterior shoulder. Dr. Ross concluded that Dr. Thomas applied the skill and care of a reasonably careful obstetrician during the delivery of Jarron and that none of his actions contributed to Jarron's injury.

¶ 23    On cross examination, Dr. Ross agreed that there was no evidence in the record that the baby's shoulder was caught on the sacral promontory. He also stated that he did not know specifically the force of the mother's contractions. He also agreed that there is "not a precise number but a physiologic range" of force necessary to cause a brachial plexus injury. He testified that in this case, there was no evidence that Jarron's injury was the result of in utero crowding.

¶ 24    During the jury instruction conference, Plaintiffs objected to the removal of the first sentence of the second paragraph of the Illinois Pattern Jury Instructions, Civil No. 15.01 (2022) (hereinafter IPI Civil No. 15.01). Plaintiffs requested the following instruction:

> "When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.
>
> If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury. However, if you decide that the defendant's conduct was not a proximate cause of the plaintiff's injury, then your verdict should be for the defendant."

The trial court stated that "I think it's real confusing when you say someone else is not in the case." The court elected to give the instruction without the first sentence of the first paragraph. The trial court also denied Plaintiff's tendered instruction based on Illinois Pattern Jury Instructions, Civil No. 30.21 (2022) (hereinafter IPI Civil No. 30.21) and the tendered emotional distress line item for the Verdict A form.

¶ 25    The jury entered a verdict in favor of the Defendant. The circuit court denied Plaintiffs' posttrial motion. Plaintiffs timely filed a notice of appeal.

¶ 26                              ANAYLYSIS

¶ 27    We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017). On appeal, Plaintiffs assert that (1) the circuit court improperly permitted the testimony of Dr. Clark, and (2) the circuit court gave improper instructions to the jury. Based on the court's errors, Plaintiffs argue the finding of the jury was against the manifest weight of the evidence.

¶ 28    With respect to the admission of expert testimony, we review the trial court's decisions on motions *in limine* under an abuse of discretion standard. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 67. A trial court abuses its discretion only if it acts arbitrarily or if no reasonable person would take the position adopted by the court. *Id.* This court does not substitute its judgment for that of the trial court in assessing an abuse of discretion. *Id.* With respect to jury instructions, we will disturb the trial court's decision only when it clearly abused its discretion. *Shvartsman ex rel. Shvartsman v. Septran, Inc.*, 304 Ill. App. 3d 900, 902-903 (1999).

¶ 29                         A. Dr. Clark's Testimony

¶ 30    Plaintiffs initially argue that certain articles and medical literature to which Dr. Clark testified were not adequately disclosed under Supreme Court Rule 213(f)(3). Rule 213(f)(3) defines a "controlled expert witness" as a person giving expert testimony who is the party's retained expert. Ill. S. Ct. R. 213(f)(3). The Rule provides that the party must identify the following: (i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case. *Id.*

¶ 31    The trial court addressed this issue in its ruling on Plaintiffs' posttrial motion. The court ruled that the articles relied upon by Dr. Clark were disclosed pursuant to Rule 213(f)(3) and during deposition. On appeal, Plaintiffs simply stated that the disclosure rule was violated and did not provide any specificity as to which medical literature testified to by Dr. Clark was undisclosed. Nor did Plaintiffs provide accurate citation to the record to support this claim. Appellants' failure to provide a sufficient record to support their claim of error requires a presumption that the court's ruling was proper. See *Aguilera v. Mount Sinai Hospital Medical Center*, 293 Ill. App. 3d 967, 971 (1997).

¶ 32    Alternatively, Plaintiffs argue that the articles and medical literature referenced by Dr. Clark did not apply to this case. Specifically, Plaintiffs raise issues with Dr. Clark's testimony regarding cases of brachial plexus injuries resulting from causes other than excessive traction. Plaintiffs also assert that Dr. Clark's reference to medical literature was a mere summary, thus improper, and that because the literature was unrelated to the facts of the case, it should have been barred. Therefore, Plaintiffs argue, the claims by their expert witnesses would have been unrefuted and a finding for Defendant is against the manifest weight of the evidence.

¶ 33    However, we first address Defendant's contention that Plaintiffs forfeited this issue because they failed to make contemporaneous objections during Dr. Clark's testimony. We find that Plaintiffs preserved this issue by raising it in a motion *in limine* and in their posttrial motion. See *People v. Hudson*, 157 Ill. 2d 401, 434 (1993). Accordingly, we move to the merits of Plaintiff's arguments.

¶ 34    In a medical malpractice action, a plaintiff must prove: (1) the proper standard of care by which to measure the defendant's conduct; (2) a negligent breach of the standard of care; and (3) the resulting injury was proximately caused by the defendant's lack of skill or care. *Bergman v. Kelsey*, 375 Ill. App. 3d 612, 621 (1st Dist. 2007). Issues involving proximate cause are fact specific and are for the jury's determination. *Vanderhoof v. Berk*, 2015 IL App (1st) 132927, ¶ 60. Proximate cause must be established by expert testimony to a reasonable degree of medical certainty. *Townsend v. University of Chicago Hospitals*, 318 Ill. App. 3d 406, 413 (2000). The weight, sufficiency and credibility assessed to medical expert testimony is within the province of the jury, as is, ultimately, the resolution of evidentiary conflicts with respect to the factual question of proximate cause. *Cummings v. Jha*, 394 Ill. App. 3d 439, 454 (2009) (quoting *Burgman v. Kelsey*, 375 Ill. App. 3d. 612, 625-26 (1st Dist. 2007).

¶ 35    Plaintiffs argue that Dr. Clark's reference to in utero crowding as a cause of brachial plexus injuries misled the jury, as there was no evidence that in utero crowding occurred in Jarron's case. Plaintiffs point to *Yanello v. Park Family Dental*, 2017 IL App (3d) 140926, to support this notion. In *Yanello*, the expert witness testified that rheumatoid arthritis and osteopenia caused or contributed to the failure of the plaintiff's dental implants. *Id.* at ¶ 44. However, there was no evidence that the plaintiff had been diagnosed with rheumatoid arthritis or osteopenia. *Id.* at ¶ 45.

The expert failed to present a sufficient foundation establishing the reliability of his opinion, thus admitting the testimony was an abuse of discretion. *Id.*

¶ 36    However, *Yanello* is not analogous to the case at bar. Here, Dr. Clark did not offer an opinion that in utero crowding was the cause of Jarron's brachial plexus injury, nor did he give any opinion on the cause of the Jarron's injury. Additionally, Defendant's expert witness Dr. Ross agreed that the injury was not caused by in utero crowding. Dr. Clark's discussion of in utero crowding was appropriate to rebut the Plaintiffs' experts' insistence that no other cause of brachial plexus injuries, absent excessive traction, exists.

¶ 37    We also find Plaintiffs' arguments against the admissibility of Dr. Clark's references to other possible causes of a brachial plexus injury without merit. Opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education in a field that has "at least a modicum of reliability" and the testimony would assist the jury in understanding the evidence. *Turner v. Williams*, 326 Ill. App. 3d 541, 552 (2d Dist. 2001). Evidence offered to explain, contradict, or disprove evidence offered by another party is proper rebuttal evidence. *Gabrenas v. R.D. Werner Co.*, 116 Ill. App. 3d 276, 283-84 (1st Dist. 1983).

¶ 38    Dr. Clark's testimony regarding the possible causes of brachial plexus injuries was admissible because it was offered to assist the jury's understanding of the medical record and to rebut the opposing party's witnesses. Plaintiffs' expert witnesses testified that they had extensive knowledge of brachial plexus injuries based on their education and review of medical literature. Both experts stated that they were not aware of any medical literature that provided cases of brachial plexus injuries resulting from causes other than excessive traction. Dr. Clark's testimony simply rebutted that testimony by providing his own basis of knowledge to the contrary.

¶ 39    We also disagree with Plaintiffs' evaluation of the evidence and their contention that their witnesses' opinions were unrefuted. Plaintiffs' expert witnesses both testified that there was no evidence in the medical record that Dr. Thomas used excessive traction. However, the witnesses stated there could be no other cause of Jarron's injury based on their knowledge and on the medical literature they were aware of. Dr. Clark then testified that based on his own research, the notion that there were no other causes of brachial plexus injuries other than excessive traction was outdated. This conflicting testimony was sufficient to raise a question of fact to be decided by the jury and this court will not substitute its judgment for that of the jury and reweigh the credibility of the witnesses. *Bergman*, 375 Ill. App. 3d at 622-23.

¶ 40    Next, Plaintiffs contend Dr. Clark improperly summarized the findings of medical literature. In response, Defendant claims Dr. Clark did not summarize the literature, but simply discussed his own personal knowledge based on research he conducted as a contributing author to the literature.

¶ 41    If specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Ill. R. Evid. Rule 702 (eff. Jan. 1, 2011). For expert testimony to be admissible, an adequate foundation must be laid establishing that the information that the expert bases the opinion upon is reliable. *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 32.

¶ 42    The purpose of Dr. Clark's testimony was to refute Plaintiffs' expert witnesses' testimony that there could be no other cause to Jarron's brachial plexus injury than excessive traction based on medical literature. Dr. Clark testified, that based on his research, there were multiple causes of

such injuries. Dr. Clark then explained how his medical research led him to that conclusion by referencing those articles. The trial court properly admitted the testimony not for the truth of the matter, but to lay a proper foundation of Dr. Clark's specialized knowledge. *Id.*

¶ 43 Plaintiffs then argue that Dr. Clark's reference to articles post-occurrence were inadmissible. Generally, standards that were not in effect at the time of treatment are irrelevant to establishing the standard of care governing the defendant's treatment. *Castillo v. Stevens*, 2019 IL App (1st) 172958, ¶ 54. However, post-occurrence articles can be used for other purposes. *Granberry by Granberry v. Carbondale Clinic, S.C.*, 285 Ill. App. 3d 54, 65 (5th Dist. 1996) (holding that post-event literature was admissible for the purpose of showing diagnostic capabilities of equipment, not to show a deviation from the standard of care). Here, the 2020 article referenced by Dr. Clark was admitted for the purpose of refuting Plaintiffs' expert witness testimony, not as proof that Dr. Thomas exercised an appropriate standard of care for the delivery of Jarron in 2015. As such, Plaintiffs' argument is unavailing.

¶ 44 We also find Plaintiffs' assertion that Dr. Clark's testimony was unrelated to the issues at trial incorrect. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the action more or less probable than it would be without the evidence. Ill. R. Evid. Rule 401 (eff. Jan. 1, 2011). As previously discussed, Dr. Clark provided the jury with credible, alternative information to explain the medical intricacies of obstetrics and brachial plexus injuries. His testimony was proper rebuttal evidence to Plaintiffs' expert witnesses' assertion that medical literature points solely to excessive traction as the cause of brachial plexus injuries. See *Gabrenas*, 116 Ill. App. 3d at 283-84. Thus, we find no abuse of discretion as to the admission of Dr. Clark's testimony.

¶ 45                                B. Jury Instructions

¶ 46    Plaintiffs assert that the trial court gave improper jury instructions. Specifically, Plaintiffs argue that (1) the entirety of paragraph two of IPI Civil No. 15.01 should have been given; (2) IPI Civil No. 30.21 should have been given; and (3) a separate line item for emotional distress in Verdict Form A was improperly refused.

¶ 47    Jury instructions communicate the correct principles of law to a jury based on the evidence presented to allow it to reach a conclusion based on the law and evidence. *People v. Nash*, 2012 IL App (1st) 093233, ¶ 26. In its discretion, a trial court may tender instructions which are non-IPI if those instructions contain "nonargumentative statements of the law." *Id*. When reviewing for an abuse of discretion, courts determine whether, when "taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles." *Schultz v. Northeast Illinois Regulation Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). "A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they clearly misled the jury and resulted in prejudice to the appellant." *Id.* at 274.

¶ 48    Plaintiffs claim the trial court erred in refusing to give the first sentence of the second paragraph of IPI Civil No. 15.01. Plaintiffs assert that the second sentence "can never be given without sentence one, because sentence two is peremptory." They argue that the first sentence should be given where there is evidence of more than one proximate cause of the injury at issue.

¶ 49    A trial court is required to use an Illinois Pattern Jury Instruction when it is applicable in a civil case after giving due consideration to the facts and the prevailing law, unless the court determines that the instruction does not accurately state the law *Id.* at 273. In that case, the court may instruct the jury pursuant to a nonpattern instruction. *Id.* When assessing the adequacy of the

instructions, we consider the totality of the instructions provided. *People v. Martinez*, 342 Ill. App 3d 849, 858 (1st Dist. 2003).

¶ 50    The "Notes on Use" section provides guidance on the second paragraph for IPI Civil No. 15.01. It states that the second paragraph "should only be used where there is evidence tending to show that the conduct of the defendant was not the proximate cause of the occurrence and the conduct of third persons or outside instrumentalities was the proximate cause of the occurrence." IPI Civil (2021) No. 15.01 (Notes on Use, revised October 2021). The Committee Comments also address the correct use of the second paragraph, stating that the paragraph simplifies the proximate cause theory by "arguing that the negligence of another person or entity, not a party to the lawsuit was the only proximate cause of plaintiff's injuries." See IPI Civil (2021) 15.01 (Comments, revised October 2021) (citing cases). Additionally, the Comments provide that the second paragraph instructs the jury that "[w]here a person is guilty of the negligence charged against him, it is no defense that some other person, or thing, contributed to bring about the results for which the damages are claimed." *Id.*

¶ 51    In the case at bar, the following instructions were given:

> "When I use the expression "proximate cause," I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.
>
> However, if you decide that the defendant's conduct was not a proximate cause of the plaintiff's injury, then your verdict should be for the defendant."

Plaintiffs argue that the following sentence should have also been included: "If you decide that the defendant was negligent and that his negligence was a proximate cause of injury to the plaintiff, it is not a defense that something or someone else may also have been a cause of the injury."

¶ 52    We disagree that the trial court erred in refusing to include the sentence to instruct the jury. The issue before the jury was whether Dr. Thomas was the proximate cause of Jarron's injury. The evidence presented to the jury did not include any indication that there was another party or entity responsible for Jarron's injury. As such, the jury would have been confused if it received instructions to make determinations on evidence that was not presented. We also disagree with Plaintiffs' contention that the second sentence may "never" be read without the first. It is in the trial court's discretion to give instructions that align with the law, even if they are nonpattern instructions. See *Nash*, 2012 IL App (1st) 093233, ¶ 26. Therefore, we find no abuse of discretion.

¶ 53    Plaintiffs also assert that the trial court erred in refusing to give the jury the IPI Civil No. 30.21 instruction. Plaintiffs insist that because Dr. Clark's testimony regarding in utero crowding as a possible cause of brachial plexus injuries was admitted, the jury should have been given instructions that contemplated in utero crowding might be considered as a pre-existing condition.

¶ 54    The IPI Civil No. 30.21 instructions read as follows:

> "If you decide for the plaintiff on the question of liability, you may not deny plaintiff's right to damages resulting from this occurrence because any injury resulted from [an aggravation of a pre-existing condition] [or] [a pre-existing condition which rendered the plaintiff more susceptible to injury]." IPI Civil (2022) No. 30.21.

This instruction requires careful consideration of whether there was evidence of a pre-existing condition in the case. *Beard v. Barron*, 379 Ill. App. 3d 1, 19-20 (1st Dist. 2008).

¶ 55    Plaintiffs' assertion is unavailing. There was no evidence presented by either party that Jarron suffered from in utero crowding. Dr. Clark presented in utero crowding as an alternative cause of brachial plexus injuries to rebut the testimony by Plaintiffs' experts that only excessive traction by the obstetrician could cause Jarron's injury. Dr. Clark did not testify that in utero crowding caused Jarron's injury. Additionally, Dr. Ross agreed with Plaintiffs' counsel that Jarron

was not injured because of in utero crowding. As such, we find no reversible error in the trial court's refusal to give the instruction.

¶ 56    Plaintiffs' remaining claim of error is the trial court's refusal to include emotional distress as a line item on Verdict Form A. Because we have found no error in the court's evidentiary decisions and instructions with respect to proximate cause, we do not reach this issue as the jury did not find Defendant liable. Accordingly, we affirm the judgment of the circuit court.

¶ 57                    CONCLUSION

¶ 58    For the reasons explained above, we affirm the judgement of the circuit court.

¶ 59    Affirmed.